**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **CRIMINAL ACTION NO.** |
| **v.** | ) | **1:13cr309-MHT** |
| | ) | **(WO)** |
| **NATHAN ALAN WESTBROOK** | ) | |

**OPINION**

**Defendant Nathan Alan Westbrook pled guilty to possession of child pornography, pursuant to 18 U.S.C. § 2252A(a)(5)(B). At his sentencing, the court accepted the plea agreement and granted his motion for a downward variance. After applying the sentencing framework laid out in United States v. Klear, 3 F. Supp. 3d 1298 (M.D. Ala. 2014) (Thompson, J.), the court imposed a sentence of 33-months imprisonment, followed by a 10-year term of supervised release. This opinion explains why the court granted this variance.**

## Factual Background

In April 2013, Alabama Bureau of Investigation agents downloaded 40 images of child pornography from a then-unknown source using an online peer-to-peer file-sharing program. Through records obtained by a subpoena, the agents linked the Internet Protocol address of the computer to Westbrook's address. They obtained and executed a search warrant for his residence. They recovered three data-storage devices, and, on at least one of them, they discovered child pornography. Agents found six images and 72 videos of confirmed child pornography, among other, legal pornography.

Westbrook was charged in a two-count indictment with distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Pursuant to a plea agreement, Westbrook pled guilty to the possession charge, and the

government agreed to drop the distribution charge.

## Sentencing Guidelines Calculation

The United States Probation Office, applying the 2014 version of the United States Sentencing Commission Guidelines Manual, determined that Westbrook's sentencing range under the Guidelines and applicable statutes is 97-120 months. According to the Guidelines, his Base Offense Level is 18. U.S.S.G. § 2G2.2(a). Westbrook also qualifies for five Special Offense Characteristics, leading to a total 15-level increase as follows:

- Because some of the files on his computer portrayed pre-pubescent minors, he receives a two-level increase. U.S.S.G. § 2G2.2(b)(2).

- Because he distributed the files, albeit without monetary gain or distribution to a minor, he receives a two-level increase. U.S.S.G. § 2G2.2(b)(3)(F).

3

- Because some of the files on his computer contained sadistic, masochistic, or violent images, he receives a four-level increase. U.S.S.G. § 2G2.2(b)(4).

- Because he used a computer to possess and distribute the pornography, he receives a two-level increase. U.S.S.G. § 2G2.2(b)(6).

- Because he is deemed to have possessed more than 600 images, he receives a five-level increase. U.S.S.G. § 2G2.2(b)(7)(D).[1]

After a three-level downward adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1(a) & (b), these enhancements resulted in a final offense level of 30. Because Westbrook has no other criminal history, his Criminal History Category is I. A Criminal History

---

1. Although Westbrook had only six confirmed images of child pornography, he had 72 confirmed videos of child pornography. For purposes of the § 2G2.2(b)(7)(D) offense-level increase, each video is considered to have 75 images. See U.S.S.G. § 2G2.2, Commentary, n. 4.

Category of I and an offense level of 30 yields a sentence range of 97-121 months. Because the maximum term of imprisonment under the statute is 120 months, the applicable Guidelines range is 97-120 months. 18 U.S.C. § 2252A(a)(5) & (b)(2).

Neither party objected to this calculation, although, as noted above, Westbrook moved for a variance under the Klear framework, and the government agreed to its application. The court now turns to application of that framework.

### The *Klear* Framework

In Klear, this court rejected the Guidelines framework for child pornography as unmoored from the current reality of file sharing and unreasonable under the factors laid out in 18 U.S.C. § 3553(a). In Klear, the court noted that, in 2012, the Sentencing Commission issued a report on non-production child pornography offenses. 3 F. Supp. 3d at 1303 (citing

5

United States Sentencing Comm'n, <u>Special Report to Congress: Federal Child Pornography Offenses</u> (Dec. 2012)). In the report, the Commission argued that, because times have changed since the child pornography guidelines were created--specifically, that the rise of the internet has transformed how child pornography is typically obtained--the Guidelines are now anachronistic and do not adequately distinguish among offenders on the basis of the § 3553(a) factors.

In light of this report, and in an effort to better capture the § 3553(a) factors, the court created the following framework: (I) a Base Offense Level of 18,[2]

---

2. Although <u>Klear</u> applies a Base Offense Level of 20 for a "typical non-production child pornography offense," 3 F. Supp. 3d at 1308, the court does not find this to be a typical case involving multiple potential Base Offense Levels. Even though he was charged with an additional count of distribution of child pornography, Westbrook pled guilty to possession of child pornography only, which carries a Base Offense Level of 18. U.S.S.G. § 2G2.2(a). The record reflects that Westbrook distributed the child pornography inadvertently and that he was offered a plea to the lesser charge of possession for that reason. This case is therefore distinguishable from <u>Klear</u>, in which the
(footnote continued)

(II) up to nine additional levels for the content and size of the collection; (III) up to nine additional levels for engagement with other offenders; (IV) up to five additional levels for previous criminal sexual behavior with youth; and (V) two floater points if one category is particularly egregious.  Factors (II) and (III) are further broken down into subcategories, as detailed below.[3]

---

defendant pled guilty to distribution of child pornography.  3 F. Supp. at 1298.

    3. The court notes, as it did in <u>Klear</u>, that:

> "These subcategories are not mutually exclusive but serve as broad outlines through which the court may capture the nature and content of the offender's behavior.  Thus, if the offender had an inordinate number of violent or sadomasochistic images of children, such that the number was not just significant but it was evidence that that such was his focus, more than three (and perhaps even up to nine) levels might be appropriate for that aspect of his collecting behavior alone."

(footnote continued)

### Application of the *Klear* framework

Because of the detailed nature of the framework, the court finds it best to provide a detailed breakdown of how each factor laid out in <u>Klear</u> applies to Westbrook.

Below is a detailed breakdown of the four factors as they apply to Westbrook's conduct:

(I)  <u>Base Offense Level</u>: 18

   Westbrook's Base Offense Level is 18 for the reasons discussed above.

(II)  <u>Content of Westbrook's Collection and Nature of His Collecting Behavior</u>: +4

   (a) Representation of age of children indicative of intentional collection of child pornography.

      Possible Points: 3

      Actual Points: 2

      Reason: Westbrook's collection was large enough to be considered an intentional collection, but it was not excessively large and contained both

---

3 F. Supp. 3d at 1308. However, as will be shown, no such modifications are necessary here.

8

        **child and adult pornography images.**

(b) **Number of violent or sado-masochistic images of children.**

    **Possible Points: 3**

    **Actual Points: 1**

    **Reason: Westbrook had a small number of such images.**

(c) **Depth of engagement in child pornography.**

    **Possible Points: 3**

    **Actual Points: 1**

    **Reason: Westbrook's collection was not organized or meticulously categorized as to any factors such as gender or age. His collection included images of both children and adults.**

(III) **Engagement with Other Offenders: +1**

(a) **Impersonal distribution of child pornography (peer-to-peer). Intentional Distribution?**

    **Possible Points: 3**

    **Actual Points: 1**

    **Reason: Westbrook was under the impression that he had turned off any sharing capabilities and did not intend others to have peer-to-peer access to his files, but he still did share.**

    **(b) Personal distribution of child pornography.**

        **Possible Points: 6**

        **Actual Points: 0**

        **Reason: Westbrook did not personally distribute child pornography.**

    **(c) Participation in online communities devoted to child sexual exploitation.**

        **Possible Points: 9**

        **Actual Points: 0**

        **Reason: Westbrook did not participate in any online communities devoted to child sexual exploitation.**

**(IV) <u>Previous Criminal Sexually-Dangerous Behavior</u>: 0**

        **Possible Points: 5**

        **Actual Points: 0**

        **Reason: Westbrook has no criminal history and no history of sexually-violent behavior.**

**(V) <u>Adjustment for Multiple Factors</u>: 0**

        **Possible Points: 2**

        **Suggested Points: 0**

        **Reason: Westbrook is not near the maximum in any category.**

Applying this framework, then, Westbrook's Base Offense Level of 18 is subject to a total increase of five levels, resulting in an Adjusted Offense Level of 23.  Under the plea agreement, a three-level reduction applies because Westbrook accepted responsibility for his crime.  This results in a final offense level of 20.  Because he has no criminal history at all, his Criminal History Category is I.  Applying the factors to the Sentencing Table, the court finds Westbrook's sentence range is 33-41 months.  Both the government and the defense agreed that this was the proper outcome under the <u>Klear</u> framework.

The court sentenced Westbrook to the lowest sentence in that range: 33 months.  The court also sentenced Westbrook to a ten-year term of supervised release following his prison sentence.  The available range of supervised release under the applicable statutes and Guideline provisions is five years to life.  18 U.S.C. § 3583(k); U.S.S.G. § 5D1.2(b)(2).

11

* * *

For all of these reasons, the court finds that the sentence imposed was sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a).[4]

---

4. Westbrook, who is 37 years old, presented significant mitigating evidence. As a boy, Westbrook was abused verbally and physically by his father. His father beat him regularly, sometimes so badly that Westbrook's eyes were swollen shut. Growing up, Westbrook was an outcast. He was bullied in school, and he was even told by his teachers that he would never amount to anything because he was too unintelligent. When he was about 12 years old, Westbrook was also abused sexually by a pediatrician.

Despite this adversity, Westbrook completed the 12th grade. Although he was unable to pass the high-school exit exams, he later earned his GED. He had a consistent work history afterwards, working as a butcher and as a grocery-cart attendant. He later earned a two-year degree in applied sciences, which he used to get a job as an aviation mechanic. He maintained his job as an aviation mechanic for nearly four years, until layoffs forced him out of work in 2013.

Other than the arrest that led to this very serious charge, Westbrook has never been arrested. He has no prior criminal history, and he has no history of sexual violence.

(footnote continued)

Before the sentencing hearing, Westbrook was examined by Dr. Catherine Boyer, a Clinical and Forensic Psychologist in Auburn, Alabama. Dr. Boyer also interviewed his family and close friends in her investigation. She found that Westbrook has suffered from low self-esteem and depression for much of his life. She attributed this largely to the ways in which he was treated when he was growing up. He has been able to manage these problems with medication. Westbrook does not suffer from substance-abuse problems.

Dr. Boyer testified that she believes Westbrook presents a low risk to commit any type of sexual offense in the future and, as a 'noncontact' offender, presents a particularly low risk of a 'contact' offense. Furthermore, she said, he presents an especially low risk to commit a contact offense compared to other noncontact offenders. Nonetheless, Dr. Boyer recommended that Westbrook receive mental-health treatment to help with his depression and anxiety problems and that his access to the internet be limited.

Dr. Boyer believes that Westbrook began using pornography in lieu of having personal relationships with women. He experiences anxiety relating to other people in general, and romantic relationships cause him even more anxiety, although he has maintained romantic relationships with adult women in the past. Dr. Boyer believes it is likely that he originally happened upon child pornography unintentionally and then started actively to search for it. Using Limewire and Frostwire, two online peer-to-peer file-sharing programs, Westbrook collected child pornography, along with legal, adult pornography. While his online account was set up to allow for sharing the files, this
(footnote continued)

**DONE, this the 4th day of February, 2015.**

                              /s/ Myron H. Thompson
                         **UNITED STATES DISTRICT JUDGE**

---

was accidental, as he was under the impression that he had turned the sharing function off.

    While this history serves as additional background to the sentence the court imposed, the hardships and the successes in this history are not sufficient to separate Westbrook from most other defendants who appear before the court, and thus this history was not the basis for the court's variance.

14